IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVE CAMPBELL,<br>**Plaintiff,** | CIVIL ACTION |
| v. | |
| LVNV FUNDING, LLC AND<br>RESURGENT CAPITAL SERVICES,<br>**Defendants.** | NO.  21-5388 |

**MEMORANDUM OPINION**

Plaintiff Steve Campbell, proceeding *pro se*, alleges that Defendants violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq.*, and Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*, by reporting inaccurate information to consumer credit reporting agencies regarding a $20,000 loan Plaintiff obtained for a dental procedure.

Defendants LVNV Funding, LLC ("LVNV") and Resurgent Capital Services ("Resurgent") have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.  For the reasons that follow, Defendants' Motion shall be granted.

I.  **FACTUAL BACKGROUND**

Plaintiff applied for a loan for use at ClearChoice Dental Implant Center in Fort Washington, Pennsylvania through a lending platform offered by Proceed Finance.  Plaintiff first applied for a $54,000 loan, which was denied.  He then applied for a $20,000 loan, which was ultimately approved.[1]  Security First Bank funded the loan, as memorialized in a loan agreement

---

[1] Plaintiff argues that a $20,000 loan application was denied.  Plaintiff provides two relevant documents.  The first purports to show a denial of a $20,000 loan application (with Plaintiff's name and referencing ClearChoice), and the second purports to show an email from one Ryan Smith with a Security First Bank email address sending an attachment titled, "Loan Denial."  Viewing the record evidence in the light most favorable to the Plaintiff, it thus appears that *an* application for a $20,000 loan was initially denied.  But regardless of whether some application for a

signed by Plaintiff, and ClearChoice received $20,000. Firstmark Services was engaged to service the loan. Plaintiff never made any payments on the loan, and Security First Bank charged off the loan with an outstanding balance of $21,788.84. Resurgent Acquisitions LLC then acquired Plaintiff's loan from Security First Bank and soon transferred and assigned the loan to LVNV.[2] Resurgent has serviced the loan on behalf of LVNV, and non-party Frontline Asset Strategies has worked to collect on the loan on behalf of Resurgent. In response to a written notice sent by Frontline Asset Strategies, Plaintiff requested validation of the debt, and Resurgent soon provided an account summary with Plaintiff's name and address, current account information, and historical account information, including an item showing Security First Bank as the original creditor. Resurgent later furnished information about Plaintiff's account to consumer credit reporting agencies.

## II.  LEGAL STANDARDS

### A. Summary Judgment

A party is entitled to summary judgment if it shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Inferences to be drawn from the underlying facts contained in the evidential sources must be viewed in the light most favorable to the party

---

$20,000 loan was denied, there is no genuine dispute that the loan at issue here was made to pay for dental work at ClearChoice in that Plaintiff admits that $20,000 was paid to ClearChoice for his benefit and funded by a loan.

[2] Plaintiff maintains—without evidentiary support—that his debt account was not in fact so assigned but his support for that proposition (screenshots of portions of the Loan Sale Agreement between Security First Bank and Resurgent Acquisitions LLC) is to the contrary.

opposing the motion." *Peters Twp. Sch. Dist. v. Hartford Acc. & Indem. Co.*, 833 F.2d 32, 34 (3d Cir. 1987).

"A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986); *Anderson*, 477 U.S. at 248-52). The party moving for summary judgment carries the initial burden "of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quoting a prior version of Rule 56). "The non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Abington Friends Sch.*, 480 F.3d at 256. The non-moving party may not "rely merely upon bare assertions, conclusory allegations or suspicions." *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). A moving party is entitled to judgment as a matter of law where the "nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which []he has the burden of proof." *Celotex*, 477 U.S. at 323. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### i. Evidence Considered at Summary Judgment

Federal Rule of Civil Procedure 56 requires that a party "asserting that a fact cannot be or is genuinely disputed must support the assertion by" "citing to particular parts of materials in the

3

record" and provides that, if a party fails to do so, the court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(c), (e). Section V of this Court's Policies and Procedures keys off of this requirement in describing the process that a party must follow in briefing a summary judgment motion. The parties must first meet and confer to develop a single joint appendix of all exhibits, which appendix the moving party must file with its brief. The moving party must also provide along with its summary judgment brief a statement of undisputed material facts with pinpoint cites to the joint record. In response, the opposing party admits or denies each stated fact and provides its own statement of disputed material facts to which the moving party responds. Each statement of fact must include pinpoint cites to the record in support of such fact. In addition, the Court's Policies and Procedures note that material not included in the summary judgment joint appendix will not be considered. They also set a page limit (30 pages) for all briefs in support of or in opposition to a motion. The procedures are designed so that, in accordance with the dictates of Rule 56 and of Rule 1 of the Federal Rules of Civil Procedure, which requires that the rules should "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1, the Court's attention is drawn speedily by the parties to the matters they, having lived with a matter for months and sometimes years, have concluded are undisputed or disputed, thus aiding the Court in deciding the motion efficiently, assisted by counsels' thorough grasp of every jot, tittle, and interstice of the record.

      Plaintiff's submissions ignore all of these procedures. His brief is 50 pages long and, although Defendants docketed their Statement of Uncontested Material Facts in Support of their Motion for Summary Judgment, he did not file anything admitting or denying such facts, nor did he submit a statement of disputed material facts in support of his opposition to the Motion.

Further, he provides in his briefing no pinpoint cites to the Joint Appendix (although he does insert document images—sometimes partial or distorted—some of which appear to be of documents included in the Joint Appendix while others do not appear in the Joint Appendix at all).

In light of these shortcomings, Defendants argue, respectively, that 1) the Court should consider their Statement of Uncontested Material Facts as admitted given Plaintiff's failure to provide his own; 2) the Court should strike the entirety of Plaintiff's Opposition because it exceeds the word limit; and 3) the Court should ignore documents inserted directly into Plaintiff's briefs for failure to comply with the Court's Policies and Procedures.

As to the first argument, while the Court may consider a fact undisputed where a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may "consider other materials in the record." Fed. R. Civ. P. 56(c)(3). So while the Court is not required to scour the record to support Plaintiff's assertions where he has failed to cite to specific record evidence, *see Dawson v. Cook*, 238 F. Supp.3d 712, 717 (E.D. Pa. 2017); *Taraboshi v. Holder*, 337 F. App'x 101, 103 (2d Cir. 2009); *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007), it will consider Defendants' facts undisputed where consistent with the record evidence and Plaintiff raises no dispute.

As to the second, in light of Plaintiff's *pro se* status, in this instance the Court will not strike the Opposition for failure to follow page number limitations. *See, e.g.*, *Harp v. Rahme*, 984 F. Supp.2d 398, 409 (E.D. Pa. 2013), *aff'd*, No. 13-4808 (3d Cir. Aug. 13, 2014) ("[T]o deny any consideration to Plaintiff's submissions due to deficiencies in formatting would conflict with the policy of construing liberally the submissions of pro se parties.").

As to the third, while *pro se* litigants must generally comply with local rules, *McNeil v.*

5

*United States*, 508 U.S. 106, 113 (1993); *Jones v. Sec'y Pennsylvania Dept of Corr.*, 589 F. App'x 591, 593 (3d Cir. 2014), the document images in Plaintiff's Opposition and Sur-Reply will be considered in this instance given Plaintiff's *pro se* status, *see Harp*, 984 F. Supp. at 409, particularly because many of the images embedded in Plaintiff's Opposition and Sur-Reply appear to be screenshots or photographs of material in the Joint Appendix.

Putting aside Plaintiff's failure to comply with court rules, for the following reasons summary judgment will be granted on his claims under both the FCRA and the FDCPA.[3]

### III. DISCUSSION

#### A. FCRA

"The FCRA was enacted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that use accurate information." *Harris v. Pennsylvania Higher Educ. Assistance Agency/Am. Educ. Servs.*, 696 F. App'x 87, 90 (3d Cir. 2017). It imposes obligations on consumer credit reporting agencies as well as "furnishers" of information to consumer credit reporting agencies. *See id.* A "furnisher" is "an entity, often a creditor, that furnishes information regarding a consumer to one or more consumer reporting agencies for inclusion in a consumer report." *Id.* (citing 16 C.F.R. § 660.2(c)).

Reading his Complaint generously, Plaintiff's FCRA claims are premised on two statutory provisions: Section 1681s-2(a) and Section 1681s-2(b) which, for the reasons set forth below, will be dismissed on summary judgment.

##### ii. *15 U.S.C. §§ 1681s-2(a) & 1681s-2(b)*

Section 1681s-2(b) imposes duties on a furnisher who has been notified by a consumer

---

[3] Plaintiff generally fails to distinguish between the two Defendants in his Complaint and Opposition and sometimes refers only to a singular, but unnamed, Defendant. Where applicable, the Court assumes Plaintiff means to refer to both Defendants.

6

credit reporting agency that a consumer has disputed information furnished by that entity. 15 U.S.C. § 1681s-2(b); *Harris*, 696 Fed. App'x. at 91 (citing *Seamans v. Temple Univ.*, 744 F.3d 853, 864-65 (3d Cir. 2014)). It provides that, after receiving such notice, a furnisher must conduct a reasonable investigation and follow certain procedures, including reviewing all relevant information provided by the consumer credit reporting agency, reporting incomplete or inaccurate information to the consumer credit reporting agencies to which the furnisher supplied the information, and, as appropriate, modifying, deleting, or permanently blocking the reporting of that information. 15 U.S.C. § 1681s-2(b)(l)(A)-(E). However, only once the furnisher receives such notice are its duties under Subsections 1681-2(b)(1)(A)-(E) triggered. *Harris*, 696 Fed. App'x. at 91. If the furnisher does not receive such notice from a consumer credit reporting agency (say, as opposed to directly from the consumer), those duties are not triggered. *Id.* Here there is no record evidence that any consumer credit reporting agency reported Plaintiff's dispute to either LVNV or Resurgent such that any duties under Subsections 1681s-2(b)(1)(A)-(E) may be triggered.

      Section 1681s–2(b) is "the only section that can be enforced by a private citizen seeking to recover damages caused by a furnisher of information." *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011). Thus, to the extent that Plaintiff seeks to make a claim under 15 U.S.C. § 1681s-2(a) of the FCRA (in that he contends that Defendants changed the date of his debt account, re-aged the debt, reported false on-time payments, inaccurately reported the debt as a "student loan," and failed to note the account as disputed), such claim must fail as a matter of law because there is no private right of action under Section 1681s-2(a) for providing inaccurate information. 15 U.S.C. § 1681s-2(d).[4]

---

[4] Plaintiff also appears to argue that Defendants violated 15 U.S.C. § 1681i. But that provision imposes

### B. FDCPA

Plaintiff's FDCPA claim fares no better. To prevail he must prove that "(1) []he is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015) (citation omitted). The questions presented here are whether the Defendants are debt collectors and, if so, whether they have violated any substantive provision of the FDCPA in attempting to collect the debt.[5]

### i. *Debt Collector Status*

Plaintiff bears the burden to show Defendants are "debt collectors" under the FDCPA. *Alamo v. ABC Fin. Servs., Inc.*, 2011 WL 221766, at *5 (E.D. Pa. Jan. 20, 2011). There are two ways under the statute by which an entity is deemed a "debt collector": if it uses "any instrumentality of interstate commerce or the mails in any business the *principal purpose* of which is the collection of any debts," or if it "*regularly collects* or attempts to collect, directly or

---

requirements on consumer credit reporting agencies, *not* furnishers of information to consumer credit reporting agencies. 15 U.S.C. § 1681i(a)(1)(A) ("the agency shall . . . conduct a reasonable reinvestigation"); *see Bibbs v. Trans Union LLC*, 43 F.4th 331, 345 (3d Cir. 2022). In that there is no evidence to suggest that either Defendant is a consumer credit reporting agency, *see* 15 U.S.C. § 1681a(f) (defining "consumer reporting agency"); *Harris*, 696 F. App'x at 90, the argument has no traction.

Similarly, Plaintiff alleges violations of FCRA Section 605 (15 U.S.C. § 1681c), arguing that certain credit reports show the re-aging of his debt and lack an indication his account was disputed. Section 1681c, however, involves requirements for consumer credit reporting agencies regarding the information contained in consumer reports and does not impose obligations on furnishers. *See, e.g.*, *Seamans*, 744 F.3d at 860 (describing consumer credit reporting agencies obligations under the provision).

[5] It is not disputed that Plaintiff is a consumer. And, although Defendants argue that Plaintiff has not shown the account at issue is a "debt" under the FDCPA, Defendants' own undisputed facts show the account at issue involved a loan for use at a dental implant center. This qualifies as an "obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5); *see also Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1122 (11th Cir. 2014) (treating medical bills as falling under FDCPA's broad definition of debt).

indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added).

To address the second prong first: LVNV cannot be considered a debt collector under the "regularly collects" prong in light of the Supreme Court's decision in *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017). In *Henson*, the Supreme Court examined the application of the "regularly collects" prong (and only that prong) in respect to an entity that purchases debt originated by another entity and seeks to collect only that debt owed to itself. *Id.* at 1720-21. Only if "the target of the lawsuit regularly seeks to collect debts . . . for 'another,'" rather than "for its own account," will that entity fall within the "regularly collects" definition. *Id.* at 1721.

Here, it is undisputed that LVNV does not collect debts "owed . . . another" but rather pursues accounts owed to itself. *See Barbato v. Greystone All., LLC*, 916 F.3d 260, 263-64 (3d Cir. 2019) (citing *Henson*, 137 S. Ct. 1718). Thus it is not a debt collector under the "regularly collects" prong of the provision. However, the same cannot be said of Resurgent. In their Answer to Plaintiff's Amended Complaint, "Defendants admit that at times, Resurgent is a 'debt collector' as that term is defined by the FDCPA" but "Defendants deny Resurgent always meets this statutory definition." There is no argument one way or the other from Defendants as to whether this case is one of those instances where Resurgent is a debt collector. So, taking the admission of the Answer in the light most favorable to Plaintiff, there is a genuine dispute of material fact as to whether Resurgent is a debt collector.

The question remains whether LVNV can fall within the definition of "debt collector" because its "principal purpose" is to collect debts. *Henson* did not address the scope of the "principal purpose" prong of Section 1692a(6). *Barbato*, 916 F.3d at 266. But the Third Circuit

9

has interpreted "principal purpose" rather expansively, concluding that "[a]s long as a business's *raison d'être* is obtaining payment on the debts that it acquires, it is a debt collector." *Id.* at 267. Specifically, the Third Circuit held in *Barbato* that an entity can be a debt collector even if it only "purchase[s] debt and outsource[s] the collection." *Id.* Thus, it is possible for an entity to be a "debt collector" under the "principal purpose" prong even when it does not engage in "overt acts of collection." *Id.* In other words, "[w]ho actually obtains the payment or how they do so is of no moment." *Id.*

Drawing on Defendants' own Statement of Uncontested Material Facts and a declaration from Kim Hannigan (Hannigan Declaration), a paralegal for Resurgent, it is undisputed that LVNV purchases debt accounts, LVNV engages Resurgent "to manage its assets, including providing the services of acting as a records custodian and servicer for such assets," and that Resurgent assigned Plaintiff's debt account to non-party Frontline Asset Strategies for collection. This shows that LVNV, at least in this case, "purchase[d] debt and outsource[d] the collection." *Id.* While LVNV outsourced servicing to Resurgent, who then outsourced collection to Frontline Asset Strategies—*i.e.*, creating two middlemen between LVNV and collection activities—that fact, although it differs from the facts of *Barbato* (which involved one middleman), does not make a material difference under the broad reasoning of *Barbato*. *See id.* at 269 ("[T]he language on which Congress settled sweeps more broadly to include '*any* business the principal purpose of which is the collection of any debts,' without regard to whether that entity delegates its collecting activities." (citation omitted)); *id.* at 268 ("The existence of a middleman does not change the essential nature—the 'principal purpose'" of the business.). In the light most favorable to Plaintiff, this evidence suggests that LVNV's "principal purpose" could be debt collection under the FDCPA. "Disposing of a matter by summary judgment is . . . entirely

10

inappropriate where there is even the slightest doubt as to the facts." *Clark v. U.S. Postal Serv.*, 1986 WL 12021, at *1 (E.D. Pa. Oct. 23, 1986) (citing *Tomalewski v. State Farm Life Ins. Co.*, 494 F.2d 882, 884 (3d Cir. 1974)). Thus, while LVNV is not a debt collector under the "regularly collects" prong under *Henson*, there is a genuine dispute of fact as to whether LVNV qualifies as a debt collector under the first prong.

Given the above, Defendants are not entitled to summary judgment on the basis of their debt collector status. Yet even though there is a genuine dispute as to whether Defendants are debt collectors, Plaintiff's claims under the substantive provisions of the FDCPA fail for lack of evidentiary support.

Again, reading the Complaint very broadly, Plaintiff's FDCPA claims could be premised on the following provisions: Section 1692d, which prevents debt collectors from engaging in harassment or abuse in connection with debt collection activities; Section 1692e, which prevents the use of "false, deceptive, or misleading representation or means" related to debt collection activity; Section 1692f, which prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt"; Section 1692g, which imposes requirements for the written notice of debts and the verification process for disputed debt accounts; and Section 1692j, which prohibits the use of deceptive forms. 15 U.S.C. §§ 1692d, 1692e, 1692f, 1692g & 1692j.

But, with respect to Section 1692d, Section 1692f, and Section 1692j, Plaintiff has not pointed to anything in the record evidence to suggest that Defendants violated these sections. Accordingly, summary judgment will be granted in favor of the FDCPA claim to the extent that it is premised on any of these provisions. For the reasons set forth below, any claims under Section 1692e and Section 1692g fail as well.

### ii. 15 U.S.C. § 1692e

Turning then to Section 1692e, that provision prevents the use of any "false, deceptive, or misleading representation or means in connection with the collection of any debt," and provides illustrative examples thereof, such as "false representation of . . . the character, amount, or legal status of any debt," "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken," "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed," "use of any false representation or deceptive means to collect or attempt to collect any debt or obtain information concerning a consumer," "the use of any business, company, or organization name other than the true name of the debt collector's business"—among others. 15 U.S.C. § 1692e. Any violation under the provision must be "material," meaning it is able to confuse or mislead the "least sophisticated debtor." *Jensen*, 791 F.3d at 419.

Plaintiff appears to maintain that the following actions he claims were taken by Defendants are in violation of Section 1692e: reporting a loan that was actually denied, reporting the debt as a "student loan," failing to mark the debt as disputed, falsely reporting on-time payments Plaintiff never made, and re-aging Plaintiff's debt.

But, once again, nothing in the record supports a claim under this section. Plaintiff admits that the proceeds of a $20,000 loan were paid to ClearChoice for dental work and admits he never made payments towards the loan. Plaintiff has not provided evidence to suggest that Defendants (rather than prior holders of the debt account) have ever reported his account as a "student loan."[6] Nor has Plaintiff supported his claim that Defendants failed to mark the debt as

---

[6] Plaintiff evidence shows only that Firstmark and/or Proceed Financial—which are not parties to this lawsuit—

12

disputed, providing only conclusory handwritten statements in the margins of credit reports, whereas Defendants' Hannigan Declaration states the account has been consistently reported as disputed by Resurgent (citing an exhibit showing the data furnished to consumer credit reporting agencies). Nor has Plaintiff provided supporting evidence for his claim that Defendants (as opposed to prior holders of the debt account or consumer credit reporting agencies) inaccurately reported on-time payments that he never made, whereas Defendants provide Resurgent's credit reporting history, which reflects that no payments were made. Nor has Plaintiff supported his claim that Defendants re-aged his account, providing only conclusory statements written by hand in the margins of credit reports.[7] In short, there is no evidence that could lead a reasonable juror to conclude that Defendants violated Section 1692e.

### iii. 15 U.S.C. § 1692g

Section 1692g describes the requirements for written notice of a debt as well as the process for verification of a disputed debt. 15 U.S.C. §1692g. Plaintiff argues that Resurgent[8] failed to verify his account in response to his request by failing to "produce[] any such proof or documentation bearing my signature" or provide the "contractual agreement of said debt." It is not genuinely disputed that Resurgent verified the debt, but Plaintiff appears to argue the verification was not sufficient on these two grounds.

---

treated the account as a student or educational loan.

[7] Plaintiff appears to argue that a difference in the "Date Opened" entry for his LVNV account between two Equifax credit reports reveals that the account was re-aged. But even assuming that such a discrepancy were relevant to a re-aging claim, Plaintiff has still not provided evidence to show that Defendants reported inaccurate or false information: he does not provide evidence that Defendants ever reported diverging opening dates, and Resurgent's credit reporting history shows a consistent opening date of February 25, 2021.

[8] Plaintiff again fails to specify which Defendant is accused of the violation, but since it is not genuinely disputed that Resurgent, rather than LVNV, verified the debt, Plaintiff's argument under Section 1692g can only go to the actions of Resurgent.

The FDCPA does not prescribe what qualifies as sufficient verification, but the requirements are minimal and do not require documents bearing a signature or contractual agreements. *See Graziano v. Harrison*, 950 F.2d 107, 113 (3d. Cir. 1991) (verification sufficient where stating "the amounts of . . . debts, the services provided, and the dates on which the debts were incurred"); *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999) ("[V]erification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt."); *Dunham v. Portfolio Recovery Assocs., LLC*, 663 F.3d 997, 1003 (8th Cir. 2011) (relying on *Chaudhry*). Here, Resurgent has met these minimal requirements. It provided Plaintiff with an account summary report showing the balance of his debt, the current account information (owner, reference number, original creditor, and account number), the dates on which the debt was incurred and charged off, and Plaintiff's name and address.

Plaintiff also argues that Resurgent, after being notified and receiving his request for verification, failed to respond within thirty days of the request for validation and "continued to report on [Plaintiff's] credit report."[9] Section 1692g requires that, if a consumer notifies the debt collector within 30 days after receiving notice of the debt that there is a dispute, the debt collector shall "cease collection of the debt" "until the debt collector obtains verification of the debt." 15 U.S.C. § 1692g(b). Again, the record shows that Resurgent adequately verified the debt. Moreover, the 30-day requirement in Section 1692g applies to the *debtor*'s period to give notice of a dispute—not to the *debt collector*'s period to provide verification. 15 U.S.C. §

---

[9] While Plaintiff argues that this is a violation under Section 1692b, a considered view is that it relates instead to Section 1692g.

1692g(b) ("If the consumer notifies the debt collector in writing within the thirty-day period . . . ."). [10]

## IV. CONCLUSION

For the reasons set forth above summary judgment will be granted to Defendants as to all claims.

An appropriate order follows.

**BY THE COURT:**

*/s/ Wendy Beetlestone*

**WENDY BEETLESTONE, J.**

---

[10] In addition to the arguments teased out by the Court *supra*, Plaintiff raises a number of other issues only in passing, *e.g.* "successor liability" and "bona fide error." But "passing reference" to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other. *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994), *cert. denied*, 513 U.S. 946 (1994).